71 Cal.App.3d 634 (1977)
139 Cal. Rptr. 560
THE PEOPLE, Plaintiff and Respondent,
v.
JOHN FREEMAN HUNTER, Defendant and Appellant.
Docket No. 28688.
Court of Appeals of California, Second District, Division One.
July 12, 1977.
*635 COUNSEL
Robert C. Amador for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.
*636 OPINION
THOMPSON, J.
After a jury trial, defendant was convicted of two counts of robbery. There is a finding of intentional infliction of great bodily injury with respect to the first count, and a finding that defendant used a firearm in the commission of both robberies. In this appeal, defendant contends: (1) the trial court erred in denying as untimely his motion to disqualify the trial judge pursuant to Code of Civil Procedure section 170.6; (2) the verdict is not supported by substantial evidence; (3) a pretrial process of photographic identification was impermissibly suggestive; and (4) he was erroneously denied his motion for a pretrial lineup identification. Although not specifically argued by defendant, there is a substantial question whether the evidence supports the use of firearm findings.
(1) We conclude that defendant's motion to disqualify the trial judge pursuant to Code of Civil Procedure section 170.6 was timely. Accordingly, we reverse the judgment.[1]

Facts Relating to 170.6 Challenge
Defendant was charged in an information filed on December 3, 1975, and arraigned on December 31 in Department 101 of the Los Angeles Superior Court. Pretrial was set for January 23, 1976, and trial for February 19 in that department. On the former date, both sides answered ready for trial and "the cause [was] listed with coordinator as a 4 day jury trial." On January 23, defendant was rearraigned on an amendment to the information alleging prior convictions. "On defendant's motion trial [was ordered to remain] 2/19/76 at 9:00 A.M. in Department 101." The record does not show what occurred on February 19. On February 26, 1976, the judge sitting in department 101 ordered that the "Cause is advanced from the Court's trial calendar of 2/27/76" and "transferred to Dept. 125 forthwith (10[00]) for Trial."
The case was transferred to department 125. Both sides announced ready for trial. Over defendant's objection, the information was amended to allege use of a firearm. Defendant was arraigned on the use of a firearm allegation and rearraigned on allegations of prior convictions. He was advised of the consequences of admitting the priors. At that point *637 defendant's counsel announced that the defendant wished to file a section 170.6 affidavit.
The judge announced that "the filing is untimely." He stated: "The jury trial is in progress.... Mr. Hunter, we are going to proceed to trial with this matter just as soon as the jury arrives. The jury is out in the hall at the present time. We are going to trial and the only reason we are in here at this point is that we have some preliminary matters that have to be taken up before the jury panel comes in. I didn't want to bring the jury panel into the courtroom to hear what was going on."

Timeliness of 170.6 Challenge
As pertinent, subdivision (2) of Code of Civil Procedure section 170.6 states: "Where the judge, court commissioner, or referee assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion [to disqualify the judge or commissioner] shall be made at least five days before that date. If directed to the trial of a cause where there is a master calendar, the motion shall be made to the judge supervising the master calendar not later than the time the cause is assigned for trial. In no event shall any judge, court commissioner, or referee entertain such motion if it be made after the drawing of the name of the first juror, or if there be no jury, after the making of an opening statement by counsel for plaintiff, or if there be no such statement, then after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced.... In the case of trials or hearings not herein specifically provided for, the procedure herein specified shall be followed as nearly as may be."
Here the identity of the judge who was to try the case was not known 10 days before trial. Unless the matter was assigned for trial from a master calendar, the challenge was thus timely if made in the trial department before the name of the first juror was drawn. Here the matter was not assigned for trial from a master calendar.
Rule 248, California Rules of Court, provides: "(a) The presiding judges in Los Angeles and San Francisco Counties shall designate a sufficient number of departments to hear all criminal cases within the time required by law and shall assign the judges to preside therein. The criminal departments shall constitute a separate group to be known as *638 the Criminal Division and the presiding judge shall designate one of the departments as the Master Calendar Department of the Criminal Division....
"(b) All informations, indictments, accusations and other criminal proceedings shall on filing be assigned automatically to the Master Calendar Department....
"(c) Upon a plea other than a plea of guilty, the case shall be assigned a trial date by the judge of the Master Calendar Department and transferred to a trial department or held for later transfer...."
The record is unequivocal that the case at bench was assigned to department 101 for trial and not to that department for further assignment. Department 101 was thus not acting as a master calendar department as defined in rule 248.
The Attorney General argues that, effective January of 1971, Los Angeles master calendar procedures were modified to place responsibility for assigning trial dates and courtrooms for trial in a "Criminal Courts Coordinator." He contends that from that time forward the "department to which the case is originally assigned is the `Master Calendar Department.'" The argument lacks substance. Rule 248 controls over any local court designation. The rule says that the presiding judge shall designate one of the criminal departments of the Los Angeles court as the "Master Calendar of the Criminal Division." It does not say that the presiding judge can designate all judges of the criminal departments as the master calendar division.
Thus, the section 170.6 challenge proposed by defendant was timely.[2] Therefore, the court lacked jurisdiction to proceed after the challenge *639 was filed. (People v. Escobedo (1973) 35 Cal. App.3d 32, 36 [110 Cal. Rptr. 550].)[3]
The judgment is reversed.
Lillie, Acting P.J., concurred.
HANSON, J.
I respectfully dissent.
I conclude (1) that rule 248 permits the master criminal calendar department to employ its direct calendaring system and (2) that neither rule 248 nor Code of Civil Procedure section 170.6 (hereinafter Section 170.6) precludes the trial department to which each case is initially assigned from serving as a surrogate master criminal calendar for purposes of requiring that affidavits of prejudice under Section 170.6 be immediately filed when notified that the matter is transferred or reassigned to another department for trial after consultations with the criminal court's coordinator, so long as defendants are personally present and adequate and proper notice of that requirement is given to the criminal bar at large.
However, in the case at bench, defendant Hunter was not personally present in department 101 when Judge William A. Drake announced that the case had been transferred to department 125 (Judge William B. Keene presiding). He (defendant Hunter) therefore cannot be charged with untimeliness for failure to immediately file his affidavit in department 101 since he did not personally have an opportunity to exercise his challenge at that time.
I conclude, however, that defendant Hunter's filing of his Section 170.6 affidavit of prejudice against Judge Keene in department 125 was untimely as a matter of law since the trial had commenced within the meaning of Section 170.6.

*640 DISCUSSION

Rule 248 vis-a-vis Direct Calendaring System
Rule 248 (which pertains to Los Angeles and San Francisco Counties) provides in pertinent part:
"(a) [T]he criminal departments shall constitute a separate group to be known as the Criminal Division and the presiding judge shall designate one of the departments as the Master Calendar Department of the Criminal Division. The work of the Master Calendar Department of the Criminal Division shall be subject to the supervision of the presiding judge.
"(b) [Master Calendar Department of the Criminal Division] All informations, indictments, accusations and other criminal proceedings shall on filing be assigned automatically to the Master Calendar Department, and all proceedings prior to trial of any issue of fact shall be heard and determined in said department; provided, however, when necessity or convenience requires, the judge of the Master Calendar Department may transfer any matter pending before him to another department, and he may transfer any matter assigned to one department to another department.
"(c) [Transfer to trial departments] Upon a plea other than a plea of guilty, the case shall be assigned a trial date by the judge of the Master Calendar Department and transferred to a trial department or held for later transfer. The trial departments shall advise the Master Calendar Department promptly of any change occurring or about to occur in their trial calendars.
"(d) ..." (Italics and underscoring added.)[1]
The criminal division of the Los Angeles Superior Court, Central District, has complied with the mandatory designation of one department as the master criminal calendar department as reflected in the Los Angeles Superior Court Criminal Trial Judges' Benchbook (hereinafter the Benchbook) of which I take judicial notice. The Benchbook includes the following:

*641 "THE MASTER CALENDAR DEPARTMENT  DIRECT CALENDARING SYSTEM OF THE CRIMINAL DIVISION CENTRAL DISTRICT
"Under Rule 248 of the California Rules of Court those departments of the Los Angeles Superior Court designated to hear criminal matters compose the Criminal Division. The Master Calendar Department, Department 100, is presided over by the Supervising Judge of the Criminal Division." (June 1976, ch. 2, § F, subd. 1, p. 110.)
Under the direct calendaring system following the preliminary hearing in the municipal court the criminal court's coordinator of the superior court, under the supervision of the presiding judge, department 100, usually assigns each case coming up from the municipal court directly to one of the trial departments of the superior court. The "necessity or convenience" clause in rule 248 permits this procedure as a practical means of coping with the crushing caseload. The direct calendar system promotes the orderly and efficient administration of justice. It also eliminates the time wasting spectacle of masses of litigants, witnesses and attorneys sitting and milling about department 100 waiting for their cases to be called while trial departments stand idle waiting for a case.

Section 170.6 vis-a-vis Direct Calendaring System
In handling challenges pursuant to Section 170.6, the Benchbook spells out the procedures under the direct calendaring system as follows: "All motions of prejudice under C.C.P. 170.6 shall be made immediately in the Superior Court trial department to which the case is assigned and said department shall be considered as the Master Calendar Department for that purpose. In those cases where an affidavit of prejudice is filed under C.C.P. 170(5), or 170.6 and the judge or commissioner is disqualified to hear the matter, the case should be reported to the Coordinator for transfer and assignment to another Superior Court department." (Ch. 2, § F, subd. 1, supra, p. 110.)
In my view the above procedure is reasonable, logical and practical, and is permitted by rule 248 being a matter of "necessity or convenience." It also meets the spirit and purpose of Section 170.6, so long as the parties and counsel are present in court and adequate notice is given to the bar of the procedure.[2]
*642 However, in the instant case the minute order of department 101 on February 26, 1976, reflects that only "counsel for defendant and People" were present and defendant Hunter was not present when Judge Drake ordered the "cause transferred to Dept. 125 forthwith (10[00]) for Trial."
Accordingly, since defendant Hunter was not personally present in department 101 at the time the case was ordered transferred to department 125 he did not personally have the opportunity to immediately exercise his Section 170.6 challenge and cannot be charged with untimeliness for failing to file his affidavit in department 101.

The Section 170.6 Challenge in Department 125
The clerk's transcript and reporter's transcript in the instant case reflect that on February 26, 1976, before defendant Hunter personally filed his affidavit of prejudice against Judge Keene in department 125 the following had occurred:
(1) The jury had been ordered up and was present in the hallway waiting to enter the courtroom;
(2) Defendant was personally present and both counsel were present;
(3) Counsel for the People and defendant announced ready for trial;
(4) Counsel for the People made a motion to amend the information to allege in each of the two robbery counts the use of a firearm (handgun) pursuant to Penal Code section 12022.5. Defense counsel objected to and argued against the motion. The court granted the motion and defendant was arraigned on the use allegation in each count and defendant denied the allegations;
(5) Defendant was rearraigned on two prior convictions of robbery in violation of Penal Code section 211 (one on Dec. 6, 1971, and the other on Sept. 1, 1972). Defendant personally and both counsel waived jury trial as to both prior convictions, the confrontation and cross-examination of witnesses, and the privilege against self-incrimination as to the priors.
Thereafter while defendant Hunter was being advised of the legal consequences of admitting the priors, defense counsel advised the court defendant wished to file his affidavit of prejudice under Section 170.6 *643 against Judge Keene. The court allowed the affidavit to be filed but rejected it as untimely.[3]
The operative words of Section 170.6 which impact on the instant case are "[I]n no event shall any judge ... entertain such motion ... after trial of the cause has otherwise commenced. ..." (Italics added.)
"[A] challenge under section 170.6 is not timely when made after a judge has heard and ruled on contested issues of law or fact in an action or proceeding. (McClenny v. Superior Court, 60 Cal.2d 677 [36 Cal. Rptr. 459, 388 P.2d 691]; Jacobs v. Superior Court, 53 Cal.2d 187 [1 Cal. Rptr. 9, 347 P.2d 9].)" (Swartzman v. Superior Court (1964) 231 Cal. App.2d 195, 200 [41 Cal. Rptr. 721]; see also People v. Barnfield (1975) 52 Cal. App.3d 210, 214 [123 Cal. Rptr. 859].)
Here, prior to the challenge (1) the jury was standing by, (2) both counsel had announced ready for trial, and (3) Judge Keene had heard and ruled on People's contested motion to amend the information to allege in each of the two robbery counts the use of a firearm pursuant to Penal Code section 12022.5. I would therefore hold as a matter of law that the challenge was not timely filed since the trial had commenced within the meaning of Section 170.6.
Nor can defendant find solace in that portion of Section 170.6 added by the 1965 amendment which states: "The fact that a judge... has presided at or acted in connection with a pretrial conference or other hearing, proceeding or motion prior to trial and not involving a determination of contested fact issues relating to the merits shall not preclude the later making of the motion provided for herein at the time and in the manner hereinbefore provided."
Herein, in my view, Judge Keene had previously made a determination of a contested fact issue relating to the merits. Defense counsel in contesting the People's motion to amend the information as to each count (the use of a firearm under § 12022.5) amongst other things claimed surprise. Judge Keene pointed out that during preliminary *644 discussions he was advised "that the victim was shot as well as the defendant." The prosecuting attorney agreed that the court was so advised and defense counsel did not object or otherwise respond. The court then overruled the defense objection to the amendment. Thus the court made a factual determination of the contested fact of whether or not defendant had prior knowledge that a handgun was involved in the robbery which negated his claim of surprise. That factual issue also relates to the "merits." "The word `merit' as a legal term is to be regarded as referring to the strict legal rights of the parties." (Black's Law Dict. (rev. 4th ed. 1968) p. 1140, col. 2). As to the People, the "strict legal right" involved here was whether or not they had the legal right to have the information amended to include the use of a firearm within the meaning of section 12022.5. As to the defendant, his legal rights are apparent and materially involved in that in the event he was convicted of robbery and the use allegation found to be true a mandatory five years would be added to the prison sentence imposed for committing the robbery.[4]
The Supreme Court in Solberg v. Superior Court (1977) 19 Cal.3d 182 [137 Cal. Rptr. 460, 561 P.2d 1148], acknowledged the existence of widespread abuses by certain members of the bar in filing affidavits of prejudice under Section 170.6 (e.g., for tactical advantage, judge-shopping, etc.) but found the section to be within the legislative perogative and constitutional. However, the court said: "[W]e emphasize the important fact that in the years since Johnson [Johnson v. Superior Court (1958) 50 Cal.2d 693 (329 P.2d 5)] the courts of this state have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted, [citing examples]" (19 Cal.3d p. 197) and "`[a] device intended for spare and protective use to be converted into a weapon of offense and thereby to become an obstruction to efficient judicial administration'" (19 Cal.3d p. 198) should not be permitted.
To allow defendant Hunter in the instant case or any defendant who did not like such a ruling under the circumstances herein involved to file a form type affidavit of prejudice under Section 170.6 in an effort or belief he could nullify the ruling which the court had just made or to remove a judge from the case just because he received an adverse ruling even though the ruling was completely proper would operate adversely *645 on the orderly and efficient administration of justice and should not be permitted.
Defendant's contention that the evidence is insufficient to support his convictions is without merit. The credibility of witnesses and resolution of factual conflicts being the exclusive province of the trier of fact (People v. Harrington (1970) 2 Cal.3d 991, 997 [88 Cal. Rptr. 161, 471 P.2d 961]) and viewing the evidence in a light most favorable to respondent (People v. Perez (1973) 9 Cal.3d 651, 653 [108 Cal. Rptr. 474, 510 P.2d 1026]), there is substantial evidence, direct and indirect (People v. Vann (1974) 12 Cal.3d 220, 225 [115 Cal. Rptr. 352, 524 P.2d 824]), to support the convictions.
Moreover, defendant cannot raise for the first time on appeal his claims that defendant's photographic identification as to count I was impermissibly suggestive which tainted the in-court identification having not preserved the objection at time of trial. (People v. Johnson (1974) 38 Cal. App.3d 1, 6 [112 Cal. Rptr. 834]; People v. Dobson (1970) 12 Cal. App.3d 1177, 1181 [91 Cal. Rptr. 443]; Vickery v. Superior Court (1970) 10 Cal. App.3d 110, 120 [88 Cal. Rptr. 834].)
Finally, defendant's claimed error in denying his motion for a lineup is also without merit. The record reflects defendant's motion was made during the beginning of the trial and made no "good cause" showing why it was not made sooner. (Evans v. Superior Court (1974) 11 Cal.3d 617, 621 [114 Cal. Rptr. 121, 522 P.2d 681].) In addition, the trial court denied the motion without prejudice and defendant failed to pursue or renew the motion.
The case of People v. Walker (1976) 18 Cal.3d 232 [133 Cal. Rptr. 520, 555 P.2d 306] (decided in Oct. 1976 subsequent to the Feb. 1976 trial in the instant case), holds that section 12022.5 applies only to one who personally used the firearm in the commission of a felony (Richardson, McComb and Clark, JJ., dis.).
Here, the evidence is overwhelming that it was defendant Hunter's confederate, not Hunter, who was the person in possession of the handgun during the robberies. Therefore, under the compulsion of *646 People v. Walker, supra, I would strike the additional term of imprisonment prescribed under section 12022.5 as to each count.
I would affirm the judgments of conviction in all other respects.
Respondent's petition for a hearing by the Supreme Court was denied September 8, 1977.
NOTES
[1] We do not reach other contentions of error asserted by defendant. We note for the guidance of the court on retrial People v. Walker (1976) 18 Cal.3d 232 [133 Cal. Rptr. 520, 555 P.2d 306], decided while this appeal was pending.
[2] Relying upon Swartzman v. Superior Court (1964) 231 Cal. App.2d 195, 200 [41 Cal. Rptr. 721], the dissent finds the section 170.6 motion untimely because, prior to the motion, the judge to whom it was directed had ruled on a contested issue of law concerning the amendment of the information to allege use of a firearm. Swartzman construed Code of Civil Procedure section 170.6 before it was amended in 1965 (Ball v. City Council (1967) 252 Cal. App.2d 136, 146 [60 Cal. Rptr. 139]). As amended, the statute provides: "The fact that a judge ... has presided at a ... hearing, proceeding or motion prior to trial and not involving a determination of contested fact issues relating to the merits shall not preclude the later making of the motion provided for herein at the time and in the manner hereinbefore provided." Certainly, a contested motion to amend an information to add a use of firearm allegation does not involve a contested fact issue relating to the merits.
[3] The constitutionality of Code of Civil Procedure section 170.6 was reaffirmed in Solberg v. Superior Court (1977) 19 Cal.3d 182 [137 Cal. Rptr. 460, 561 P.2d 1148].
[1] Rule 249(c)(2), provides:

"The word `shall' is mandatory and the word `may' is permissive."
[2] Apparently subsequent to February 8, 1977, the criminal court's coordinator's office was eliminated from the process of transferring such cases. When a timely Section 170.6 affidavit is filed, the cases are now apparently sent back to department 100 for assignment to another trial department.
[3] The "Declaration under C.C.P. Section 170.6" was contained in a form, a supply of which is usually kept by the clerks of the trial courts for quick access. The form has blanks in which only the title and number of the case, name of declarant (party or attorney) and the name of the judge must be filled in. A place for the date and signature of declarant is also supplied. Such a form was filed in the instant case and hand written across the top of the form appears "Feb. 26, 76 Rejected as untimely  filed after trial had started" followed by the initials "WBK."
[4] Effective July 1, 1977, section 12022.5 was amended to reduce the additional period of confinement to two years and empowered the court to strike the additional punishment where mitigating circumstances were present provided the court spelled its reasons out on the record.