[Crim. No. 7898. First Dist., Div. One. June 25, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GUY YOUNG III, Defendant and Appellant.

**COUNSEL**

Nielsen, Townsend & Hales and Phillip M. Steinbock for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Guy Young III appeals from a judgment, based on jury verdicts, convicting him of rape by "threats of bodily harm" (Pen. Code, § 261, subd. 4) and assault with a deadly weapon (Pen. Code, § 245, subd. (a).)

No contention is made that the evidence is insufficient to support the verdicts.

■ Young's first contention—that his in-court identification should have been excluded—is without merit. No objection to such identification was made at the trial. He may not now for the first time question it on appeal. (*People* v. *Hawkins,* 7 Cal.App.3d 117, 124 [86 Cal.Rptr. 428]; *In re Carl T.,* 1 Cal.App.3d 344, 353 [81 Cal.Rptr. 655]; *People* v. *Morrow,* 276 Cal.App.2d 700, 704 [81 Cal.Rptr. 201]; *People* v. *Diaz,* 276 Cal.App.2d 547, 554 [81 Cal.Rptr. 16]; *People* v. *Levine,* 276 Cal.App.2d 206, 207-208 [80 Cal.Rptr. 731]; *People* v. *Grigsby,* 275 Cal.App.2d 767, 773, fn. 3 [80 Cal.Rptr. 294]; *People* v. *Hardy,* 275 Cal.App.2d 469, 472 [79 Cal.Rptr. 801]; *People* v. *Harris,* 274 Cal.App.2d 826, 832 [79 Cal.Rptr. 352]; *People* v. *Hatfield,* 273 Cal.App.2d 745, 748 [78 Cal.Rptr. 805]; *People* v. *Neal,* 271 Cal.App.2d 826, 832, fn. 5 [77 Cal.Rptr. 65]; *People* v. *Short,* 269 Cal.App.2d 746, 749 [75 Cal.Rptr. 156]; *People* v. *Rodriguez,* 266 Cal.App.2d 766, 769 [72 Cal.Rptr. 310].) We note that Young's trial started in February 1969, long after the lineup and in-court identification decisions of *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; and *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21].

The trial court properly declined to give the jury two instructions requested by Young.

■ The first request was that the jury be instructed they could return a battery[1] (Pen. Code, § 242) verdict, as a lesser offense included within the charge of rape "by threats of . . . bodily harm." (Pen. Code, § 261, subd. 4.) Young's theory seems to be that the physical abuse inherent in involuntary rape is necessarily a battery. Accepting, *arguendo,* this contention, it follows that the evidence here establishing such a battery as a matter of law must also establish the commission of rape. Accordingly, if Young is guilty of battery, he is also guilty of the greater offense. It is not error to refuse to instruct the jury of their right to convict of lesser offenses included in the offense charged when the evidence shows that the defendant, if guilty at all, is also guilty of the crime charged. (*People* v. *Thomas,* 58 Cal.2d 121, 127 [23 Cal.Rptr. 161, 373 P.2d 97]; *People* v. *Asher,* 273 Cal.App.2d 876, 895 [78 Cal.Rptr. 885].)

---

[1]"[B]attery is any . . . unlawful use of force or violence upon the person of another." (Pen. Code, § 242.)

■ The second requested instruction is that known as CALJIC (California Jury Instructions-Criminal) No. 35 (Rev.). Its text, as submitted by Young, follows: "Motive is not an element of the crime charged and need not be shown. However, you may consider motive or lack of motive as a circumstance in this case. Presence of motive may tend to establish innocence. You will therefore give its presence or absence, as the case may be, the weight to which you find it to be entitled." Young's theory was that he had a satisfactory sex life and therefore had no motive to commit rape. It has been suggested that an instruction such as that here requested, relates to a matter of fact and invades the province of the jury. (*People* v. *Bermijo,* 2 Cal.2d 270, 278 [40 P.2d 823].) In any event it is established law that it is not error to refuse such an instruction. (*People* v. *Bormijo, supra,* at p. 278; *People* v. *Wilkins,* 158 Cal. 530, 536-537 [111 P. 612]; *People* v. *Mann,* 5 Cal.App.2d 36, 38 [42 P.2d 94]; *People* v. *Page,* 86 Cal.App. 148, 158 [260 P. 591]; *People* v. *Gorman,* 31 Cal.App. 762, 763-764 [161 P. 757].)

■ Young's next contention—that the trial court erroneously declined to strike certain testimony—is well founded. He relies on Evidence Code section 771, which as relevant provides: ". . . if a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, *such writing must be produced at the hearing at the request of an adverse party* and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken." (Italics added.)

Young's defense at the trial was an alibi. He testified that throughout the day of the alleged offenses in San Jose he was approximately 50 miles distant in Richmond and San Francisco, California. Young's landlady testified that she had seen him on that day in his San Jose apartment. She admitted refreshing her recollection as to the date by looking at some rental agreements before coming to court. Following this testimony, defense counsel stated:

"Your Honor, I would have to ask that this witness' testimony be stricken until we have an opportunity to view these documents that she has used to refresh her memory." The court denied the "motion." At the conclusion of the witness' testimony counsel renewed his "motion to strike this witness' testimony . . . unless the documents are produced." This motion, also, was denied. These rulings were error since the motion to strike was proper unless the rental documents were produced as required by section 771.

The question remaining as to the instant contention is whether, as claimed by the People, the rulings were harmless error. The relevant evidence includes the following: the victim positively identified Young as her attacker

who had taken pictures of her after forcing her to disrobe; her assailant had left behind a "Salem" cigarette butt, a brand shown to have been used by Young; the victim had finally eluded her rapist by running from the house screaming, after which he precipitously fled leaving his camera in the house and his car at the curb; fingerprints found on the camera were those of Young who was also the owner of the parked automobile. We are impelled to the opinion, after an examination of the entire cause, including the evidence, that it is not reasonably probable that a result more favorable to Young would have been reached in the absence of the complained-of error. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].) We also declare a belief that such error was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

Young finally contends that the court erred in sentencing him on both the rape and assault verdicts and in ordering the sentences to run consecutively. The argument is: "Since the assault was committed only as a means to the intended rape, it is necessarily included within the acts which constitute the rape and thus falls within the provision of California Penal Code section 654."[2] Young relies on *Kellett* v. *Superior Court,* 63 Cal.2d 822, 824-825 [48 Cal.Rptr. 366, 409 P.2d 206], which states, "If only a single act or an indivisible course of criminal conduct is charged as the basis for a conviction, the defendant can be punished only once although he may have violated more than one statute. Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor."

As relevant to the instant issue the evidence discloses the following. Pretending to be an employee of a real estate company Young gained entrance to his victim's house. Inside, he brandished a knife as a result of which he forced her to disrobe and yield to an act of sexual intercourse with him. Upon the completion of the act he ordered the victim to the bathroom and to stay there "for five, ten minutes to give him time to leave." But he did not leave; after a wait he opened the bathroom door, whereupon the lady ran to the front door clothed in her son's overcoat. Before she could open it Young was upon her, striking her with a knife, and keeping the door closed. Moments later she again reached the front door. This time she ran out

---

[2]Penal Code section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. In the cases specified in sections 648, 667, and 668, the punishments therein prescribed must be substituted for those prescribed for a first offense, if the previous conviction is charged in the indictment and found by the jury."

screaming, but as she did Young threw the knife at her, hitting her on the back.

It appears to have been the theory of the People that the "assault with a deadly weapon" count related to the events following the rape which we have outlined. Young has not furnished us with any record, or statements or argument of the People, indicating the contrary. The evidence fully supports a conclusion that the events following Young's act of rape constituted a second course of criminal conduct, divisible from his earlier act of rape. (See *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 824-825.) It would be a strange rule indeed if Young, following his completed act of rape, and having had an opportunity to depart the premises, was given a sort of immunity from punishment for any other crime he might thereafter choose to commit against his victim. Young's sentences were without error.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

A petition for a rehearing was denied July 16, 1970, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied September 10, 1970.